The next case and the last case this morning is United States v. Benjaman Shelabarger. Thank you, Your Honor. Mr. Burns, once again, you may proceed, sir. May it please the Court. Mr. Shelabarger raises four issues for review. Time permitting, I'm going to discuss three of them and stand on my brief on the Eighth Amendment claim. As much as possible, I'm going to try to reach the other three. I'm going to start off with the argument that the District Court committed clear error and not granted the two-level decrease in Mr. Shelabarger's sentence under United States Sentencing Guideline 2G2.2b.1. Government initially relies on United States v. Sweeney, indicating that the defendant has the burden of proving his entitlement to a reduction under the guidelines. To some degree, I think that there's an argument that that should be limited to Sweeney in cases like Sweeney. Sweeney involved the application of the minor role adjustment. Sweeney relied, in its opinion, on this Court's opinion in United States v. Carrasa-Vargas, which is a 420 F3rd 733-2005. That also involved application of the minor role adjustment. Carrasa itself relied on United States v. Thompson, which is 60 F3rd 514-1995, which had to do with the one-level reduction for timely provision of information concerning the offense. The circumstances of this reduction, I think, are different because applying for a minor role adjustment or the one-level reduction for timely provision of information actually involves the defendant providing information to the court that would justify the reduction. Under these circumstances, for the defendant to demonstrate that he did not have the intent to traffic or distribute child pornography would essentially require the defendant to prove a negative, which is virtually impossible. It's our position that looking at the record as a whole, not only the trial record but the sentencing record, and the absence of any evidence that the defendant ever had any intent to distribute child pornography or ever did so intentionally, that entitles the defendant to the reduction under 2G2.2b1. The analysis that the government relies on, the analysis I think the district court relied on... What's that, Your Honor? Those offenses frequently are analyzed with the kind of equipment that's being used or that's available. Yes. And so what do you say about that in this case? And that's actually kind of where I'm going next, actually, because this court has had an opportunity in a slightly different context to look at that, and that has to do with the increase, the enhancement in the defendant's sentence under 2G2.2b3. There's a whole panoply of increases for distribution. And they do look at the type of actually the peer-to-peer software that the defendant is utilizing, in which files, as is true through the ARIES network, files are saved in a shared folder, and other individuals are able to take them out of the shared folder. And this court, in interpreting the increases under 2B3, has indicated that if a defendant knows that he has that software, and if the defendant knows that that software has those capabilities, and if the pornography has been distributed in that manner, then the defendant qualifies for the enhancement under 2B3. To this point, this court has not done that with respect to the reduction under 2B1, and I think there's a good reason for that, because I think there's a distinction between what's required under 2B1 and what's required under 2B3. Essentially, what's required for the enhancement under 2B3 is that the defendant distribute child pornography, and I've gone through the analysis that's been used by this court for that. But under the commissioner's reasons for adopting Amendment 664, in which we got 2B1, the commissioner's indicated that it applies to defendants who do not have the intent to distribute. So there's another element there that isn't really necessarily, does not apply in 2B3. You can get the distribution. Well, would intent to distribute encompass intent to share? Right, yes, yes. And so why isn't the choice to sign up for one of these peer-to-peer sharing programs, why isn't that as probative for this reduction as it is for the enhancements? Well, people don't sign up for the networks really with the intent to share. They sign up for the networks with the intent to get, and there is sharing. There is sharing that goes on. Why do you say that? Why is that so? Because people sign up for the- Is this an empirical statement, or is this just what you'd like us to believe for this case? Well, I think it's in the testimony in this trial the way that the peer-to-peer networks work is that people sign up for the peer-to-peer networks because they can get stuff faster. They can get movies faster. They can get music faster because of the way that these things are set up. Yeah, because their stuff is available too. Well, it's not like a contract. It's not like you sign a contract saying I get to have faster download speeds and get more information in exchange for- I haven't heard why the analysis is any different for the enhancement than for the reduction. Well, because to get the enhancement, you don't have to intend to distribute. You can simply sign up knowing that the software does distribute. I mean, this court has said that. If you sign up for the peer-to-peer network software and you know it has the sharing capabilities and you know you have the software, and if that software does distribute, then you qualify for at least a two-level enhancement under 2B3. That's the world we live in right now. You don't have to sign up with the intent to distribute. You don't have to know that you're ever distributing to anybody else, and in a lot of cases the defendant really never does distribute knowingly. I've never thought of it as a strict liability inquiry. It's not necessarily strict liability, but essentially if the defendant knows that he has the software and knows that it has the capacity to send files out, and if it does send files out- Then he's a distributor. Well, then he has distributed. That's what this court has held. But it's not a strict liability crime. It's a knowing crime. For one thing, yeah, it's a knowing crime, and it's a sentencing enhancement. It's not really a crime, but nevertheless, I mean, it's knowing. I would hope that there's some correlation between the criminal code and the mens rea for guidelines enhancements. I assume there was. I think Judge Loken is right. It's knowing. It's knowing under the enhancement. But our position is it's got to be more than knowing to deny the defendant the reduction. It's got to be intentional. So you get the reduction as long as there's no evidence that he ever did it. That he ever intended to. That's the way it's written. The problem is that- But intent can be inferred. We have this problem all over the criminal law. The defendant doesn't have to testify, and most of them are smart enough not to make admissions, so you have to figure out intent by circumstantialism. It has to be proven beyond reasonable doubt, though. Well, not- It's not in sentencing, but it has to be proven by some standard in the sentence. And it wasn't in this case. Well, the inference has to be drawn from a preponderance of the evidence. Exactly. But there has to be evidence and there has to be a finding by the district court. And the district court here essentially engaged in the same analysis that it would engage in in applying the distribution enhancement, which is entirely different. It's written differently. The guideline commissioner has made the statement that it applies to people who did not have the intent to distribute, and intent's not a factor in the distribution. It should be treated differently. I'm asking this court to find that. Because the guideline commissioner said it's not a factor, this court should find as well that it's not a factor. Mr. Schellenbarger in this case was entitled to a decrease. There is nothing in the record to indicate anything about his knowledge or his intention to distribute this child pornography to anybody else, even if we accept everything else in favor of the government. Now, with respect to the obstruction of justice enhancement, we're arguing that there's clear error in this case. And we recognize we have an uphill battle here because the district court basically resolves credibility conflicts, and this court reviews them, but reviews them for clear error. So there is a point to which this court can look at the decisions made by the district court. Is this about his statement that other people in the house were responsible? Well, and that's a good point. That's a good point because that's one of the areas in which I think the district court committed clear error because the district court partially gave the enhancement because arguing that Mr. Schellenbarger pointed the finger at his nephew and claimed that he was responsible. And the government relies on that in the brief. But if you read the totality of Mr. Schellenbarger's testimony, he doesn't really point the finger. He doesn't say, I saw my nephew downloading child pornography or I have any personal knowledge that my nephew downloaded child pornography. What Mr. Schellenbarger testified to had to do with the nephew's computer access, the nephew's erratic behavior when he was using the computer, and the fact that several months before the search of this house, he caught the nephew downloading pornography onto the computer. He caught him doing that, and that doesn't just come from Mr. Schellenbarger. That comes from pretty much all the other witnesses. The defendant's father testified about- Adult pornography, I mean. At least all the other witnesses. That's another big point, actually. All during the trial, the United States attorney and the agent for the government kept trying to shepherd the jury into believing that all that Mr. Schellenbarger pointed out to his sister was adult pornography, and that was just patently false. And that came out- How was it patently false? It was patently false because that came out during the- when we developed the testimony of the sister and the sister's mother on cross-examination, and I specifically asked him, I said, did he limit what he told you to adult pornography? And the answer was no, he didn't. He just said pornography. And as a matter of fact- I had the impression that the mother looked at some of it, or did he? Well, she looked at some. She's not saying she saw child pornography. She's saying she saw pornography. But I asked them both specifically, did he limit it to adult pornography? And the answer from both of them was no, he didn't. And as a matter of fact, when the sister testified in front of the grand jury, she characterized it as child pornography, and by the time this case made it to trial, the government had a whole line of questioning to kind of get her back off that path and back on the path where it wasn't child pornography. But that's one of our big objections, both with respect to this obstruction of justice enhancement and in the sufficiency of the evidence. It was so important for the government to make the jury think that all that was found in that December incident was adult pornography, that at one point the agent looked- and it's in the record- turns to the jury, looks at the jury, and says that. Well, it's important for the jury to know that this was adult pornography and not child pornography. It was important enough for the government to communicate that to the jury that the government asked the agent on the stand, what's the difference between child pornography and adult pornography? And the answer is, well, adult pornography is legal. Child pornography is a crime. I mean, that was pervasive through the trial. But by the time the actual witnesses, and they weren't defense witnesses- Blame the Supreme Court. What's that? Blame the Supreme Court. What do you mean? Adult pornography is protected speech. Well, yeah, I'm not blaming anybody. What I'm saying is- What's wrong with talking in real terms to laymen about legal concepts? Because it wasn't true. Because it was false. It was a prevarication. I haven't heard you say there was evidence that the nephew limited, not that he would necessarily know how to limit what he got off from these sources to adult pornography. Right. That's my point. Well, yeah, but we had hard proof that the defendant had child pornography on his equipment, right? Well, you're talking about the defendant. I'm talking about the nephew. I know. I'm talking about the nephew. There wasn't any hard proof as to the nephew. Well, you're assuming that the defendant's responsible then. Now, if you're talking about those- All I said was that there was child pornography on his equipment. Okay. And we talked about- Hard proof of that. Yeah, we talked about that. I mean, there were six videos on his computer that were downloaded and viewed in a two-day period back in 2010. Never looked at them again. We're not a jury or a trial judge. No, we're not. I mean, what are we arguing here? I'm sorry I even opened it up, except we were talking about obstruction and whether he pointed the finger at his nephew. Right, and he didn't. He didn't specifically say the nephew downloaded child pornography. The crux of his testimony was, I did not knowingly receive child pornography. You know, there were all these collateral things that came up between him and the agent, the whole thing about the circumstances of the search. The jury could have found him guilty for receipt without resolving any of those factual determinations. I thought the government says the district court had found that he lied about the circumstances of the arrest. Right. And, again, that gets into a long discussion about the relative credibility of the defendant and the agent, which this court normally does not get into. But the bottom line is the circumstances of the arrest had nothing to do with the ultimate question of fact, which was, did Mr. Schellabarger knowingly receive child pornography? It was a collateral issue. And the jury could have accepted Mr. Schellabarger's version of the truth with respect to that and virtually all the other things they were fighting about and still found him guilty. That's the point there. And, again, I understand dealing with credibility issues. I mean, we have a steep uphill battle that we face both here and with respect to the sufficiency of the evidence claim. But much of what the district courts found against Mr. Schellabarger in determining that the obstruction of justice enhancement applied simply wasn't true. He didn't point the finger at the nephew. The testimony of the government's own witness was consistent with the defendant's testimony about the functionality of the laptop. And then the circumstances of the search, that was a collateral issue. Thank you. We'll hear from the government. Mr. Kirkman, again. Thank you, Your Honor. I'll start with the sentencing enhancement. The enhancement doesn't apply by the plain terms of the guideline itself. In order to qualify for the enhancement, a defendant has to make two showings. The first showing is that his conduct was limited to the receipt or solicitation of child pornography. You said enhancement. You mean reduction. I'm sorry. The reduction, Your Honor. We're talking B-1. Yes, we're on the same page, and I should have said reduction. The first showing the defendant has to make is that his conduct was limited to the receipt or solicitation of child pornography. Well, that's not true here. How can he do that? How can any defendant do that? Well, he can point to the evidence in the record. But I don't want to get bogged down on the issue of who has the burden because I think it … Well, under the reason for amendment, how could the explanation there, how could a defendant ever establish, satisfy that which the amendment says he's entitled to? Well, in this case, there was a trial. The court heard evidence about whether the defendant's conduct was limited to receipt or solicitation of child pornography. There was testimony from both the case agent and from a computer expert, although specifically from the case agent, who said that the defendant's conduct was not limited to the receipt of child pornography because he distributed child pornography. He did that by doing what? Sending it out. There was proof that he actually sent it out, not just that he had the capability of doing so. What the evidence showed was that he put these files, child pornography files were in the shared folder, and that the case agent downloaded them through the file sharing program from the computer at this home. And that counts as distribution under the guidelines very clearly. The definition of distribution under the guidelines is extremely broad. What was the commission thinking about? And again, back to my theoretical question, anybody who has that type of equipment on the computer can never establish a lack of intent. Well, I think what they were thinking about is cases where all the defendant did was receive child pornography. It's easy to imagine those types of cases. For example, if someone emails a defendant child pornography, but the defendant is not involved in file sharing or sending out child pornography. In other words, file sharing is the key to this. So anyone who has file sharing, ipso facto can never establish lack of intent to distribute. Well, I think at a minimum, anyone who has file sharing and who actually shares those files, there's no question that those people are guilty of distribution. Any defendant who is caught because an agent downloaded from his file sharing program is going to have a tough time getting this reduction. He's not entitled to the reduction by its plain terms. I mean, there's no question. But that's not necessarily true then that everyone that is enrolled in a program couldn't establish it was never used on different facts. That's true. What will come into play at that point is the definition of distribution, which is in note one of this particular enhancement. And the definition says that it includes posting material involving the So then there would be a question about, you know, if the files were in a person's shared folder, but no one ever actually downloaded them, would that be distribution? I think that's probably an open question in this circuit. Luckily it's not a question the court has to answer here because the files were shared, they were downloaded, they were distributed. With whom? With the case agent. Can a case agent create a crime? He was an undercover agent acting in an undercover capacity. And the answer is yes. If a defendant shares. It's just like impersonating a 14-year-old girl. Yes. I guess we shouldn't agonize why. It's a sting. It's a sting. It's a sting. It's an undercover agent who buys drugs or, in this case, it's the same principle. There's distribution there. Not only was the evidence at trial plain. To belabor this a little bit more, if the agent hadn't downloaded this, there'd be no enhancement. Well, if the agent hadn't downloaded it, it's true, there would be no enhancement for distribution, which is a separate enhancement. And the defendant could then argue that he's entitled to this reduction under 2G 2.2B1. But because he did distribute that argument, the second argument about the reduction doesn't even get off the ground. There's no question that the defendant distributed. His sentence was enhanced for distributing by two levels. He doesn't challenge that enhancement on appeal. There's no controversy about that. I don't know why I'm bogged down on it. And so under the first prong of 2G 2.2, he can't meet that prong. So this court doesn't even need to wade into what his intent was. If the court were to wade into what his intent was, I think this court's decisions relating to the distribution enhancement are relevant here. And what this court has said, and Mr. Burns alluded to this, is that the purpose of a file-sharing program is to share files. In other words, it's to distribute those files. And what the court has said in that context is that unless there's concrete evidence that a defendant was ignorant about how these file-sharing programs operate, then it's reasonable to infer. Are you talking about this record or another case? Well, I'm talking about both. I mean, it certainly applies on this record. Well, but Mr. Burns says in the real world, that's not why most people sign up for this peer-to-peer. It's to get, not distribute. Now, I think Justice Breyer could say there's a good question for empirical research and study, which I dare say hasn't been done. And I don't know the empirical answer. I think that the testimony that Mr. Burns alluded to is a little bit more equivocal. Well, the statement is frequently made by prosecutors that that's what the evidence is. Well, we know that people are not. . . In order to get more, that you put yours up. Yes, and that's clearly the bargain that's made here, whether it's explicit or not. The reason that these programs, I believe, are so fast and so convenient and so popular is that you have to give something in order to get that service. And what you give is that you make your files available to others. And because everyone's sharing their files, that's why it's so fast to download them. The way that most of these programs work is that you can. . . That's not why it's fast. I think actually in part it is because you download a piece of the file from one user and a piece of the file from another user, and you can do it all simultaneously. That's my understanding of how many of these programs work, is that you're actually downloading a single file from multiple other users at the same time. So I do think the fact that they're available for distribution is part of what makes this an attractive service for people who want to get a lot of stuff very quickly. But again, all of that is, I think, pretty far afield of where the court needs to go to resolve this particular issue. I'll turn then to the obstruction, which I think is a pretty straightforward issue. As Judge Loken said, we had a trial in this case. At that trial, the defendant testified. He said that he never received child pornography. He said that very clearly, point blank. The jury obviously did not believe him. They convicted him of receiving child pornography. The judge also did not believe him. If that was the basis for the perjury, our case law would say reverse. Well, there were multiple bases for the perjury. I understand, but the fact that he took the stand and denied the crime, he's got a constitutional privilege to do that. Of course. Which cannot be punished criminally. But in this case, the district court made findings that he lied in three separate areas during his testimony at trial. First, he lied when he denied downloading child pornography. Second, he lied when he said his laptop computer did not work or wasn't operable. And third, he lied about the circumstances of his arrest and interrogation. What Mr. Burns is asking is for this court to reweigh the evidence and engage in a credibility finding that's contrary to the jury's verdict and to the judge's findings, which is, of course, the exact opposite of how this court conducts its review. His defense was that it may have been on my equipment, but I didn't do it, right? That was his defense. So denying downloading is no different than denying the crime? Yes, Judge. I think what this court's case law says is that the district court can't just say— If he admitted downloading, he admits the offense, right? If he admitted downloading child pornography, then he admits the offense. All right, so don't tell me that that, quote, lie is the basis for obstruction because that argument is contrary to our case law. Well— You have a constitutional right to take the stand and defend yourself, even if the jury disbelieves you. So what did he do that was material beyond denying the offense? Well, among other things, his testimony that his laptop was inoperable, the judge found was not credible. This is the one that came from California? Yes, according to the defendant. And he said that it didn't work. The entire time that he had it, the only thing he was able to do on it at most was to play DVDs. That was his testimony at trial. There was a forensic expert who testified that one of the files of child pornography found on that computer was created on that computer within days before the search warrant was executed. So I think it was four days before the warrant was executed, that file was created. That's hard scientific evidence to suggest that the defendant's testimony was false. So that lie was a material lie. It certainly was meant for the jury to conclude the defendant didn't commit the crime. His lies about the circumstances of the arrest were also material. That testimony was meant to discredit the case agent, which was a crucial theme of the defense of this trial. Mr. Burns, in fact, went into that theme in his argument today, saying that the case agent was trying to this whole argument about adult pornography versus child pornography and that the case agent was acting inappropriately when he testified about that. A core theme of this trial, and it's throughout the defendant's brief, was that the case agent was not credible and that he acted inappropriately in this case. The defendant's testimony about his arrest was that the case agent marched up to the defendant's bedroom, stuck a gun in his face, brought him downstairs and interrogated him, that it was a mob mentality, that he wasn't able to speak, that agents were constantly interrupting him. The district court found that that was not credible. The case agent testified to the contrary both at trial and at sentencing. The case agent, in fact, said he never went upstairs that day. He certainly didn't stick his gun in the defendant's face. There's actually a photograph that was admitted as an exhibit at the sentencing. What about the other inhabitants of the house did they testify? I'm sorry, Your Honor? What about the other inhabitants? Did they testify about that subject?  I don't think there was any other evidence on that. But in any case, even if it was simply a choice between believing the case agent and believing the defendant, the district court made a credibility finding after watching both men testify. That credibility finding is virtually unassailable on appeal. This court is not in the business of reviewing a cold record, as Your Honors know better than I do, and reaching an adverse credibility finding different based on the briefs or the transcripts. It seems to me as I think about it, that finding was not necessarily made by the jury. That is true, not necessarily. The district court had to make an independent credibility judgment because the verdict of guilty didn't necessarily establish what the jury thought about the arrest. That's true, Your Honor. The court did make that finding, and he made it specifically as to all three of the categories I mentioned. It's on page 31 of the sentencing transcript. So I think the findings of the court were specific. They were based on credibility judgments. Those credibility judgments are not the sort of findings this court will upset on appeal, certainly not in this case. They were reasonable judgments, and the court was entitled to make them. I'm happy to answer any additional questions. If there are none, I'd ask the court to affirm Mr. Smith's conviction in his sentence. Thank you very much. Thank you. Does Mr. Burns have any time? Would you like a minute or two, or will you rest on your argument and brief? The files go into a shared folder on a peer-to-peer network. When they go out, according to this court, as Judge Loken pointed out, pretty automatically at that point it counts as distribution. But what's required for the enhancement is the defendant has the intent or to deny the reduction if the defendant lacked the intent to distribute, and that's a distinguishing factor. With respect to the defendant making a false statement about the laptop being inoperable, it was the government's own technical witness that pointed out that that laptop had not been on the Internet since March of 2011, which is consistent with what the defendant said. The defendant's testimony was consistent with the government's own witness. That partially downloaded picture that they found on that computer three days before the search, that's somewhat problematic because it's difficult to understand where that would have come from since the computer had not been on the Internet for two years. The case agent's testimony with respect to the circumstances of the search. It was used in 2011. Yes. He testified that he brought it with him when he moved from California in January of 2012. Yes. Defendant testified that he purchased the computer on Craigslist late in 2011. And there's no evidence, obviously, in the record discrediting that. The last time that the computer was functional on the Internet, according to the government's own technical witness, was in March of 2011, before that. Those six videos that were stored on that computer were from May or November of 2010, and the last time they were viewed were in 2010. And again, the government's own witness says it hadn't been functional since March of 2011. So the point is the defendant's testimony that that laptop was not functional is consistent with the government's own technical witness. Not inconsistent. It's consistent. It hadn't been on the Internet. The defendant said he couldn't use it. Well, the main point was that he was blaming other people for downloading things before he ever brought it with him to the household, right? Well, no, that's not true. He wasn't blaming necessarily anybody for those files that were on his laptop back in 2010. What he's saying is he bought that computer on Craigslist late in 2011, never knew what was on it, never saw those videos, and that's kind of consistent with, again, maybe not inconsistent with what the government's expert says. Finally, I guess going back to the conflict with the case agent about the search and about the interrogation, that would be material in this case had the defendant confessed. Then the defendant could say that the actions of the agents and the action of the lead agent in breaking into his house, coming into his room, guns loaded, questioning him, all those facts in dispute, would enter into, this is why he confessed, and the jury should not believe the confession. Defendant didn't confess in this case. So basically this conflict between himself and the case agent was nothing more than a conflict between himself and the case agent. Didn't enter into the jury's verdict. Jury could have found him guilty without resolving any of those issues, and he should not get the enhancement for obstruction of justice. Well, the case is submitted, and we'll take it under consideration. This completes this panel's argument calendar for the week, and we'll stand in recess subject to call.